**Alan D. FOUNTAIN,**
**Plaintiff–Appellant,**

v.

**METCALF, ZIMA & COMPANY, P.A.,**
**Defendant–Appellee.**

**No. 90–8391.**

United States Court of Appeals,
Eleventh Circuit.

March 11, 1991.

Richard P. Decker, Peter V. Hasbrouck, Decker & Hallman, Atlanta, Ga., for plaintiff-appellant.

David R. Aufdenspring, Susan J. Moore, Dara L. DeHaven, Powell Goldstein Frazer & Murphy, Atlanta, Ga., for defendant-appellee.

Before FAY, COX and MARKEY *, Circuit Judges.

* Honorable Howard T. MARKEY, U.S. Circuit Judge, for the Federal Circuit, sitting by desig- nation.

MARKEY, Circuit Judge:

Alan D. Fountain (Fountain) appeals from a summary judgment entered by the U.S. District Court for the Northern District of Georgia dismissing the complaint because Fountain was not an "employee" as required by the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (ADEA). We *AFFIRM.*

## BACKGROUND

Fountain sued an accounting firm, Metcalf, Zima & Company, P.A. (the firm), alleging that its termination of his relationship with the firm violated the ADEA. Fountain, Arthur Metcalf, Donald Zima, and Hunter Rice were the only member/shareholders comprising the firm. In granting summary judgment for the firm because Fountain was a partner and not an "employee", the district court noted these undisputed facts set forth in the affidavit of Arthur Metcalf, as member/shareholder and President/Co–Managing Director of the firm:

[Fountain] owned 31% of the outstanding shares of the capital stock of the professional association.

The four shareholders are referred to as partners by clients, employees and by each other. Firm publications also refer to the four shareholders as partners.

The partners have final authority and responsibility in all aspects of the Firm's operation. Responsibility for satisfactory completion of the Firm's engagements, for the general administration of the entire practice and contributions to solutions of problems affecting the Firm as a whole rest with the partners.

Unlike the Firm's employees, the partners share in the profits, losses and expenses of the Firm.

Unlike the Firm's employees, [Fountain's] compensation was based on a share of the Firm's profits ...

Unlike the Firm's employees, [Fountain] was jointly and severally liable for certain debts, obligations and liabilities of the professional association.

Unlike the Firm's employees, [Fountain] had a right to vote on his shares on such matters as amendment of the Firm's agreement, admission of new shareholders, termination of a shareholder's interest, approval of draws, shares of net profits, special distributions, and any other income to be allocated to any shareholders and dissolution of the Firm.

The firm is a "professional association" or "professional corporation" (professional corporation), an entity that allows doctors, lawyers, accountants, and other professionals to practice their profession as do partners in a partnership while benefitting from certain liability and tax considerations applicable to corporations.

## OPINION

### *Introduction*

■ The sole issue is whether Fountain was a partner in the firm or an employee of the firm and thus an ADEA beneficiary. The present fact pattern—a member/shareholder of a professional corporation suing as an "employee" for violation of the ADEA—constitutes a case of first impression in this court. On a national scale, ADEA cases dealing with the partner/employee dichotomy are rare. The Supreme Court, however, has recognized a parallelism between the ADEA and Title VII. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). In a Title VII case, this circuit noted a clear distinction between a law firm partner and an "employee" of the partnership:

We find a clear distinction between employees of a corporation and partners of a law firm. In making this distinction, we do not presume to exalt form over substance.

*Hishon v. King & Spalding,* 678 F.2d 1022, 1028 (11th Cir.1982), *reversed on other grounds,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). *Hishon* did not involve a member/shareholder of a professional corporation, but did involve a female associate who sued a law firm for discrimination when the firm denied her a partnership. She argued: (1) partners of a law firm were equivalent to employees of a

corporation; (2) the prospect of partnership was an "employment opportunity" or a "term, condition or privilege of employment"; or (3) her termination for failure to make partner was an unlawful discharge. 678 F.2d at 1026. This court accepted none of the three proposed bases for jurisdiction. In reversing (because the second basis properly conferred jurisdiction), 467 U.S. at 76, 104 S.Ct. at 2234, the Court had no need to and did not distinguish between a partner and an employee. Nor did the Court discuss indicia useful in making such distinction. Justice Powell, however, stated in his concurring opinion:

> I write to make clear my understanding that the Court's opinion should not be read as extending Title VII to the management of a law firm by its partners. The reasoning of the Court's opinion does not require that the relationship among partners be characterized as an "employment" relationship to which Title VII would apply. The relationship among law partners differs markedly from that between the partnership and its associates.

In *Hishon* this court dealt with the assertion that partners were equivalent to employees by looking to the decisional approach set out in *Calderon v. Martin County,* 639 F.2d 271, 272–73 (5th Cir. 1981) [1]:

> status as an employee under Title VII is a question of federal, rather than of state, law; it is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand.

Neither *Hishon* nor *Calderon* dealt with the issue *sub judice.* As above indicated, cases that have are rare, but two instances appear in the Reports. In *E.E.O.C. v. Dowd & Dowd,* 736 F.2d 1177 (7th Cir. 1984), the court held that a member/shareholder of a professional corporation was not an "employee", citing Justice Powell's *Hishon* concurrence and *Burke v. Friedman,* 556 F.2d 867 (7th Cir.1977) (accounting firm partner not an "employee"):

> The EEOC contends that *Burke* is inapplicable to the present case because it involved a partnership rather than a professional corporation. We disagree. As Dowd correctly contends, this distinction is of little value to Title VII purposes. The role of a shareholder in a professional corporation is far more analogous to a partner in a partnership than it is to the shareholder of a general corporation.

736 F.2d at 1178.

In *Hyland v. New Haven Radiology Ass.,* 794 F.2d 793 (2nd Cir.1986), the court said that a professional corporation could not be considered a partnership because of the form of the entity involved:

> the use of the corporate form precludes any examination designed to determine whether the entity is in fact a partnership.

794 F.2d at 798.

We reject the exaltation of form over substance that resides in reliance on a label ("corporation") applied to the entity as in *Hyland,* or on a label applied to a claimant [2]. We agree with this statement found in Fountain's brief: "[t]he definition of employee 'is not restrictive and must turn on the facts of a particular case.' *E.E.O.C. v. Pettegrove Trash [Truck] Service, Inc.,* 716 F.Supp. 1430, 1433 (S.D.Fla.1989)."

Consideration of the statutory language, the legislative history, and federal case law having reduced the issue to the single question "partner or employee", we look to the particular circumstances of the case at hand, *Calderon,* 639 F.2d at 273, and, in so doing, we focus not on any label, but on the actual role played by the claimant in the

---

**1.** The Eleventh Circuit sitting *en banc* adopted as precedent the law of the Fifth Circuit as it existed on September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*).

**2.** Justice Powell stated in his *Hishon* concurrence that "Of course, an employer may not evade the strictures of Title VII simply by labeling its employees as "partners." As applied here, that concept precludes a partner from obtaining the benefits of the ADEA simply by labeling himself or herself an "employee". 467 U.S. at 79, 104 S.Ct. at 2235.

operations of the involved entity and the extent to which that role dealt with traditional concepts of management, control, and ownership.

### Fountain's Role

■ Fountain challenges none of the findings of the district court quoted above. Nor does he raise any genuine issue of material fact relating to the role he played and the status he occupied in the firm. It is undisputed that, unlike the firm's employees, Fountain: shared in the firm's profits, losses, and expenses; was compensated on the basis of a share in the firms's profits; was liable for certain debts, obligations, and liabilities of the firm; and had a right to vote his thirty-one percent ownership on member/shareholders' amendments to the agreement, on admission of new member/shareholders, on termination of relationship with member/shareholders, on draws, and on distribution of profits and income. Those facts are virtually a textbook listing of the management, control and ownership factors that establish Fountain's role as that of partner, not employee. As stated by the 7th Circuit:

> The economic reality of the professional corporation in Illinois is that the management, control, and ownership of the corporation is much like the management, control, and ownership of a partnership. We therefore see no reason to treat the shareholders of a professional corporation differently for purposes of Title VII actions than we did partners of the accounting firm in *Burke*.

*E.E.O.C. v. Dowd & Dowd*, 736 F.2d 1177, 1178 (7th Cir.1984) (en banc). The economic reality in this case is that Fountain was a partner in the firm.

Fountain's reliance on *Hyland* is unavailing. Though we have rejected the court's indication in *Hyland* that use of the corporate form is controlling, the court did note that Hyland had signed a two-year renewable employment agreement and received a fixed $60,000 annual salary from which tax was withheld. Fountain's agreement was not limited in time; his compensation was a share of firm profits, if any; and the record reflects no tax withholding.

The appealed-from judgment having been summary, it is axiomatic that we must draw all reasonable fact inferences in favor of Fountain. As bases for such inferences, Fountain cites use of the label "employee" in two firm documents and the "autocratic" manner of control exercised by Metcalf as President and Co–Managing Director. Neither citation raises a genuine issue of material fact and neither would constitute a reasonable basis for drawing even an inference that Fountain was an employee.

As above indicated, the evidentiary value of a label is extremely limited, the economic reality of the role played being a more probative indication. Moreover, if further proof of the inadequacy of labels were needed, the label "partner" was commonly and more frequently applied to Fountain by clients, employees, other shareholders, and firm publications, and in his complaint Fountain labeled his purported replacement and his fellow member/shareholders as "partners." Similarly, assertions of Metcalf's "autocratic" manner of control do not create a genuine issue of material fact or a reasonable basis for inferring that Fountain was a mere employee. The district court correctly held that Fountain's participation in the firm's management, control, and ownership was uncontroverted. Domination by an "autocratic" partner over others is not uncommon and does not support a finding that the others are "employees." *Wheeler v. Hurdman*, 825 F.2d 257, 273–74 (10th Cir.1987).

### CONCLUSION

There was no genuine issue of material fact. Fountain was a partner and not an employee entitled to sue under the ADEA. Accordingly, the judgment of the district court must be and is

*AFFIRMED.*